The 4th District Appellate Court of the State of Illinois has reconvened. The Honorable Thomas M. Harris presiding. Good afternoon, Council. The last case of the day, it carries consolidated numbers 4-25-0239, 0-240, 0-267, and 0-268. In Ray, T.B. and S.B. minors. We'd like to proceed with appearances first for the appellant. Zoe Arthurson McCall. Thank you. And for the appellee? Clarence Wesselick Connelly. Okay, for the appellant, you may proceed. Good afternoon. May it please the Court, Council. My name is Zoe Arthurson McCall from James Kelly Law Firm, and I represent the appellant in this matter. In these consolidated cases, we're really dealing with 2 crucial findings that the trial court made that we argue are against the manifest weight of the evidence. 1 being the trial court's finding of dispositional unfitness, and the 2nd being the trial court's finding that the barring placement with the paternal grandparents was in the minor children's best interests. Regarding the dispositional order, making the minors' words of the court and finding that the appellant was unfit, the trial court's finding is against the manifest weight of the evidence because the record clearly demonstrates that the opposite result was the one that was the proper result for the court, and the respondent should have been found fit. If we go through the history of this case briefly, it's a little bit unique in terms of juvenile abuse cases, where it started with a continuance under supervision order in the fall of 2023, and the petition to revoke first being filed in May of 2024, and the amended petition to revoke that the state ultimately proceeded on being filed in January 30th of 2025. The respondent ended up stipulating to certain violations of the continuance under supervision order, 2 regarding the other parent, the mother, her drinking habits and associated conflict, and another violation having to do with the respondent filing for an order of protection that was ultimately not granted. The minor TB was found to be in an injurious environment, but I would note for the court that these, the violations that the respondent stipulated to were incidents for which TB was not present, and they were incidents that occurred after the state initiated proceedings to revoke the continuance under supervision that the case had been proceeding under. Our position is that the determination of unfitness was unreasonable, arbitrary, and not based on the evidence presented because the respondent was deemed to be cooperative by DCFS. He had completed all of the services possible. The 1 exception to that was that the respondent had not been able to complete the psychological evaluation that had been ordered after the adjudication hearing. However, the record reflects that the referral was in the process of being made and that the respondent's failure to complete that portion of services was ultimately not due to the respondent's failure to act. Supervised visitation with both children had been going well. As it relates to the motion to bar placement with the paternal grandparents, supervision had been occurring in part at the paternal grandparents' residence. With respect to the respondent, he's quite markedly different than the other parent, the mother, in this case. When the case was initiated, the respondent had been living with his parents. The other parent, the mother, was living outside of that home. She had a child out of a different relationship, and that is how this case ultimately came into the trial court's attention due to that respondent mother testing positive for TB. The other child was not tested positive for illicit substances upon the birth of that other child. That other child is not part of these proceedings except insofar as the trial court saw fit to admit evidence of case materials relating to that other child whom the respondent is not the father of. The respondent's home was deemed appropriate by the caseworker, and the respondent's testimony at the dispositional hearing demonstrated that the respondent was willing to have the mother reside outside of the residence so that the children could return home with him. Isn't it for the trial court to decide whether he will or she will credit that representation by the father in light of all of the other history in the case? You know, good intentions, right? That's great. He wanted to keep the child away from the mother, but to that point, he hadn't acted on that, or at least had fallen down a few times on that. I would agree that it is within the trial court purview to make that judgment. However, I would note for your honor, respectfully, that the trial court had indicated that that judge believed every word that the respondent had put in his petition for that order of protection. And at the same time, did not believe the respondent's representations that he had, that he was willing to have the mother reside out of their residence and had taken steps for her to reside at a different location. It is not an uncommon type of juvenile abuse and neglect case for one spouse to not protect the children from exposure to domestic violence influenced by or administered by the other spouse. And I don't think we would expect judges to necessarily have to credit the statement of intention that, oh no, I will in the future. I will in the future. I haven't so far. He's still living with me, but I will in the future kick him out and protect the kids from it. Well, I would certainly agree that it's not uncommon for juvenile abuse cases to involve domestic abuse or domestic violence, such as this one. I think if we, if this court looks back at the available record and the history of the case, the respondent residing with the other parent was actually not typical of their relationship. It was only fairly recent throughout the duration of this case. And indeed, the case had began while the respondent was not residing with the other parent, who is the aggressor of domestic violence. So I think that if the court had properly evaluated the available record before it, taking into consideration the respondent's available family support, that the proper finding would have been to credit the respondent's representation that he did intend to live apart from the mother. Doesn't that cut the other way? Because even though this case has been filed and we know the problems are stemming mainly from mom, and then you go let mom move in with you? I certainly understand how it could cut the other way. Our position is that given that the respondent had only moved out of his parents' residence after the case, in part so that the children could reside with his parents, I think that the proper weight afforded to the available evidence for the court would nonetheless be that the respondent's position should have been credited. That's a reasonable argument, but why would it be an abuse of discretion for a judge to say, I don't agree with that? I think that the abuse of discretion is demonstrated by the trial court's, not just the trial court's findings, but the trial court also makes some what I would consider unfortunate remarks regarding the respondent's intentions to make the mother leave. I would refer this court to page R169, line 12 with the trial court's comment about the respondent's intentions. And I think taken on the whole that the respondents having completed services and the fact that the home itself had been visited by DCFS and was deemed appropriate, and the respondent, again, didn't just say that he would make the mother move out. He had actually taken steps to find her a different place to live, had visited that place. And the reason for the mother being the one to leave the residence as opposed to the respondent was testified to at the dispositional hearing, and that was that the respondent simply had more property, so it would have been easier for him to make her leave as opposed for the respondent to leave. So, counsel, I have a question for you. You're arguing on appeal, if I understand you correctly, that the trial court should have credited the respondent's testimony with regard to his plans for how he could be custodian of the children involved. You seem to be arguing that trial court erred and we should recognize it as an error when the trial starts and not the respondent's testimony. Aren't we supposed to be deferential to the trial court's determination with regard to hearing the witnesses, and how are we supposed to second-guess that determination from a cold record? The trial court is absolutely entitled to deference, as your Honor states. I would argue that in this situation that the available evidence in support of the respondent's testimony is overwhelming and is what tips the scale, so to speak, from something that this court should uphold over onto the side of something, a finding by the trial court that this was against the manifest weight of the evidence. Furthermore, your Honor, a finding of fitness was not the only available option for the trial court to make. Respondent's counsel at trial certainly argued that the respondent should be found fit. However, in the alternative, there was the argument made that the respondent should be unable as opposed to unfit, and that was specifically due to the issues involving the mother at the time. If it's not considered against the manifest weight of the evidence or an abuse of discretion for the trial court to have found the respondent unfit as opposed to fit, I think it certainly would be for the respondent to have not at least been found to be unable at that time. What would be the effect of that argument prevailing on the relief? We end up in the same place, don't we? Well, your Honor, I think that the effect of that for the respondent certainly would make certain visitation with the children easier, and I think it would, one, make it easier for the respondent to have time with his children, but also a finding of unfitness is more difficult to come back from rather than a finding of being unable at that time. It certainly is an option for the trial court that's available, and I believe that unable would have been much more fitting than unfit. Would you care to address the jurisdictional question with respect to the appeal from the permanency order? Yes, your Honor. Would that be the, my argument that the trial court did not properly find that the minors were neglected? No, with respect to the grandparent placement. Oh, absolutely, your Honor. With respect to the jurisdictional argument that the state made with respect to that motion to bar placement, it's our position that the motion to, that the court's order barring placement with the grandparents was a final and appealable order, giving this court jurisdiction under Rule 301, all the trial court had to do. Isn't Rule 301 and Rule 303, aren't those to do with the final order in the case, meaning case is done? It certainly is, but I would argue that because, one, because the orders were, the order was made during the same hearing as the dispositional order, one would be a reason to giving this court jurisdiction, and two, that make an order as final and appealable when all the court has to do is enforce that order, and that certainly is the case here with the order bar placement. But the Supreme Court often tells us that for an order during the course of the case, not the final order, appealability usually requires it to be final, but it doesn't necessarily make it appealable unless there's a rule that also speaks to its appealability before the final judgment in the case. There is no rule that makes this type of order appealable, is there? There's not a rule issued in the trial court's order barring placement. I would agree with your Honor's assessment. I would nonetheless argue that given that the order is final, there's no, you know, the phrase, you know, barring placement, there's, that's a final order, so I would argue that this court still has jurisdiction. But if the issue is placement, it hasn't even decided placement, it just said, well, here's one option that won't work. Right? If the Cubs get knocked out in the first round of the playoffs, that doesn't decide who the champion is. There are other things to be determined. There are other choices. So just saying not these two people doesn't bring with it any finality as to the placement decision. I mean, it's final for them, but they're not the ones appealing. I would respectfully argue that it is final for the respondent, your Honor. You know, these are, especially given the, you know, these are one respondent's parents, and they're also, you know, looking at the case as a whole, these, this home, the paternal grandparents, was deemed to be the children's home for most of their lives. So I respectfully submit that this order was pretty final to everyone involved, especially the respondent who is appealing it. Would it be fair to state that your basis for this argument is primarily faith B and comparison of this order to the dispositional order? I believe that's a fair assessment, your Honor. I see that my time appears to be almost up, unless there are further questions. I would reserve a couple minutes for rebuttal. You have, you have five. You also have about two hours, or sorry, two minutes and 50 seconds. No, not two hours. Don't, don't freak out. Two minutes,  and a half here, but if you don't want to use that, you can certainly wrap up. I would just briefly go to an argument that was made in both sets of briefs, the one having to do with the order to bar placement and the dispositional order. The state, and that was with respect to the argument that the trial court did not properly find that the minors were neglected. The state in their brief made the argument that it was essentially a scrivener's error for the court to not make a written finding that the minor was neglected. But I would note that this error occurs in both sets of cases. If we look at the case concerning TB, that's in the record for appellate case 0239 on page C112. The same error occurs in the case for SB. It's case ending 0240 on page C1110. But it may not be in the written order, but the judge very clearly made the finding. Don't we look at the whole record? I would agree that this, the court certainly looks at the whole record, but I would submit that this was not a scrivener's error. This was error that meant that this court did not have jurisdiction to proceed to the dispositional hearing. And I would otherwise rely on my briefs subject to rebuttal and I thank the court for its time. All right. Thank you. Thank you, counsel. Excuse me. Thank you, counsel. You'll have time rebuttal. Ms. Connell, you may proceed with your argument. May it please the court, counsel. Today's case involves two children, SB and TB. When SB, the daughter, was seven years old, her older brother, who was five years older than her, grabbed her, yanked her by her leg, and caused her to have blisters, abrasions, welts, cuts, and bruises throughout her body. You can see the injuries that occurred in this case. There's photographs contained in the exhibits. I implore you to look at the exhibits from 40 to 57 in this case. And she had injuries from what her brother did to her. And her cheeks, her forehead, behind her ear, her jaw, her eyelid, her arm, her foot, and on her knees. And this occurred in the presence of the respondent in this case, the mother, and both paternal grandparents in this case. And what was their response when they saw this happening is they laughed and they videotaped. And they did nothing to interfere with what TB was doing to his younger sister in this case. That is what this case is about. Now, counsel, I'd like to address the issue as far as the adjudicatory hearing first, then the dispositional order, and then respond to counsel's argument regarding the jurisdictional question for the motion of our placement. As far as the adjudicatory hearing, as I pointed out in my brief, this really amounts to a scrivener's error or clerical error in this. And when courts run into these types of issues, it's common for what the courts will do is look to see whether or not there's been any oral findings in this case. And in this case, there was extensive oral findings of neglect by the trial court in this case. And the record shows this on pages 126 through 130 in this case. And if there's any conflict between the oral findings in this case and the written findings, courts will always find that the oral findings control. And that's what controls in this case. So the fact that there was not one box checked on the adjudicatory order does not merit any grounds for this court to find that it should reverse the trial court's decision as far as the defendant argues relating to this failure to check this one box, that therefore, the trial court didn't have jurisdiction to consider the subsequent motion to bar placement in this case. There is an entirely separation between a motion of bar placement and a finding of neglect or negligence. A motion of bar placement can be raised at any time during these proceedings in order to make sure that if there's any concerns that they have as far as any future placement for these children. And those are statutory motion. Yes, it is. So and as I cited to him in my brief, the Juvenile Court Act allows the trial court to restrict contact with a minor and that's contained in Section 405-2-25 of the Juvenile Court Act. So this is a separate and entirely separate motion brought in these types of circumstances. And there is no precursor that the court would need to be able to find neglect or fitness or anything like that. So there is order in this case. As far as the trial court's finding that the respondent was unfit, in addition to this evidence that I've showed that there were severe injuries that occurred to S.B. at the hands of her older brother T.B. in this case, the jury, the court who had this case for a year and a half and was very involved with this family, also had evidence that the respondent and the mother continued to associate despite what was obviously a very unhealthy relationship between the two of them. There was evidence before the trial court that there was continued police contact. There was two different instances in 2024 in which the police were called and the mother obviously had difficulty with the consumption of alcohol in this case. And that even led to an additional charge of when the defendant filed an emergency order of protection in this case. But did he follow through with it? Did he think about his children in trying to protect them from the mother? No, he ended up not appearing for it and it ended up being dismissed in this case. There's also evidence before the trial court when it came at the dispositional hearing that there was an indicated report against T.B. related to the injuries that he caused to his sister. There was an indicated report against the respondent and the mother in this case for another instance in which there were burns by what they termed burns by neglect from a blister and a burn to S.B.'s arm and then there was a delay in recognizing and reporting it to reporting and addressing the harm and there was an additional charge of inadequate supervision as to that event. S.B. talked about in her CAAC interview what she went through at the hands of her brother and how the respondent and the mother and the paternal grandparents responded in this case. The DCFS worker in this case, now the defendant is trying to rely upon the testimony and the ultimate recommendation by the DCFS worker in this case as to the fact that the children should go back in the care of the father. But obviously, there was substantial evidence beyond what this recommendation was. And this is also a case worker who had only been involved in this for two months as opposed to the trial court who had been involved in this case for over a year and a half and was intimately familiar with what had occurred over the years. And there was substantial evidence besides whatever recommendation that the DCFS worker had in this case. And even she testified on cross-examination that she had serious concerns that if the respondent and mom were still living together because of the additional conflicts that had happened in reporting to the police. And she also admitted the fact that the defendant didn't even tell her about these additional police contacts and that she ended up discovering it on her own. And so all of this evidence the trial court had before when it made its decision as far as the dispositional order finding him that the defendant was unfit. Now defendant wants to rely upon the have this court do a finding of unable. I don't understand why she would want to find unable because the standard of proof that the state has in this case he has to establish by preponderance of the evidence that the parent is unfit or unable or unwilling. It's an or situation. They don't need to find all three. They just need to find one of them. So if the trial court found that he was unfit, it doesn't matter that the trial court didn't find him unable in this case. That doesn't that that doesn't that that all the other all the court had to find was one of the three. So that whole that argument is is meritless. It doesn't and as as as your honor asked, the remedy in this case is still the same. So the and then he talks about the that the fact that he could have moved that that that he was taking steps to have the mother moved out. Well, the trial court heard this and clearly the defendant in this case was not hearing what he needed to do was not following through was not understanding what steps needed to be taken prior to getting the children back. What he wanted to do was he wanted to play a game of wait and see and in this case he he wanted to say okay if you give me my children back then I'll kick her out and that is and as the counsel talks about the way that the trial court explained I categorized it I happen to agree that is not how trial courts operate in the in these types of proceedings. It's not a wait and see game. It's not I'll do this I promise to do this and I'll follow through. That's not how we go about deciding the best interest of children. And then as far as the jurisdictional argument that we made in our brief as far as the motion to bar placement, there's discussion as to what constitutes a final and appealable order. There's clear case law that says the dispositional order is a final and appealable order. That is what they filed their notice of appeal under rule 301. The motion to bar placement is not a final and appealable order. It is it constitutes an interlocutory appeal and under an interlocutory appeal the defendant must follow Illinois Supreme Court rule 306 a and b and under b they have to file a petition for leave to appeal within 14 days of the order. They filed in they did not file a petition for leave to appeal and therefore this court does not have jurisdiction to determine the decision regarding the motion to bar placement in this case. Unless we elected to treat the petition as one being for a permissive appeal. Well, my understanding is that there's two exceptions in this and in that under that statute and they have to do with if you if they filed a notice of appeal but they relied upon an unconstitutional statute or invalid cases and those are the exceptions and I don't know if you're that's what you're talking about but those are the two exceptions that they have to um that they can they can follow in order to find that there's an exception to this rule for filing a petition for leave to appeal but that's not what they argued and that's not what happened in this case. I don't see that there was any in the Curtis B case the Supreme Court said that we could excuse non-compliance with rule 306 by construing the notice of appeal as a petition for leave to appeal. So the question is whether we should or should not do that. Right but again I think in those types of situations that falls under one of the two categories and I apologize I'm not familiar with the the Supreme Court case that you're referring to but I would think that in this kind of circumstance that's what they're referring to is those are the two exceptions in this case that this court should look at to determine whether or not you look at whether a notice of appeal um constitutes a petition for leave to appeal in this case. So the Supreme Court has very clearly said that a dispositional order is final and appealable. It has also said that an order terminating parental rights is neither final uh but it is it is not final but it is appealable under a specific rule. How are we supposed to answer the question on this this permanency order logically if we look at those as our kind of goal posts? Well I think part of part when you refer to it as a permanency order I don't think it's really constitutes a permanency order. I think a permanency order is part of a permanency review and that even in of itself the courts have found is not a final and appealable order. So this is separate apart they I if I recall in their in their reply they refer to it as a as part of a permanency review and they try to make some connection between the order in this case and what constitutes a permanency review. This is separate and apart from any type of permanency review and in fact the permanency review in this case is set for August 12th. So it's coming up so this this motion was just happened to be heard at the same time as the dispositional order. So again the dispositional order is a final and appealable order. It doesn't then if a motion of our placement just because of the mere fact that it was heard on the same day as a dispositional order doesn't then in and of itself you know the the final appealable order does it a nature of a dispositional order doesn't impute into another order that is heard that day. And I don't think what they're doing is relying on faith be where the the order in question was a permanency order which is normally not appealable but it was found to be appealable because it had sufficient indicia of finality. If it's it's not it's final in temporary finality is actually what it is. It's really not it's not final. This can the defendant and and the and the I should say the the grandparents in this case can go back and seek further review. It's a temporary order in this court has said that's final and appealable. Right right that's true that's true but I think in the the the fact that in this case the the there is clear case law that provides for the and in and describes a dispositional order as a final and appealable order and there is defendant doesn't say to any case law providing that a motion of our placement constitutes a final and appealable order there so that that is that that is the difficulty that the defendant has to overcome in this case. And as to any of the other issues that were raised in this brief the state would rest on its arguments in its brief and we'd ask that this trial court or this court affirm the trial court's decisions as far as the the adjudicatory order and the and dispositional order and the motion of our placement in this case. All right thank you Ms. Connelly. Ms. Arthurson-McCole, rebuttal argument. Briefly your honor council discussed the alleged violence from TB to SB and the you know the role that that played in this case and I would just briefly point out that the allegations that SB made were frankly fairly outlandish you know there's discussion about videotapes being or video being taken of alleged abuse by the father the grandparents but there's no evidence in the record whatsoever that there's any attempt to confirm that these videos exist and one allegation in particular that SB makes has to do with being locked in her room while her while the adults went to a what she calls an ice park and I would note that even the trial court questioned the veracity of that allegation when it came before it and you know there was a presumably and I believe the record reflects this a reason that the respondent stipulated to the allegations in the second amendment petition to revoke that he did regarding those three incidents involving the respondent and as to the order barring placement I would argue that it does have sufficient indicia of finality I'm giving this court jurisdiction to decide whether the court the trial court's finding was against the manifest way to the evidence part of the reason that the motion was brought was because the minor TB was going to be moved from his placement now these children were placed separately for reasons that are not apparent from the record but one of the goals of placement is to keep the siblings together and it's present in the record that DCFS argues that the reason that they intended to place the minors back with the paternal grandparents was so that the children could be placed together given that the minor TB had to be moved um for again reasons that are not explained in the record I would respectfully request that this court find that the trial court's findings that the respondent was unfit were against the manifest way to the evidence and grant other relief so requested in my briefs thank you all right thank you counsel thank you both the case will be taken under advisement and the court will issue a written decision the court stands in recess